OPINION.
Defendant-appellant Edward Smith appeals from the judgment of the Hamilton County Court of Common Pleas convicting him of murder and sentencing him to fifteen years to life in prison. He was also convicted of and sentenced for a gun specification to the murder charge. On appeal, Smith raises five assignments of error. Finding none of them to have merit, we affirm the judgment of the trial court.
 FACTS
Eugene Jenkins was found murdered in his truck on the morning of December 27, 1996, in Lincoln Heights, Ohio. Earlier that morning, he had been seen driving in his truck with a passenger who had a beard and wore glasses and a cap. The witness who saw the truck stated that Jenkins and his passenger appeared to be arguing. Jenkins's son also testified at trial that he saw Smith sitting in his own truck outside of his father's barber shop on the morning of the murder.
Michelle Thomas was walking to a friend's house in Lincoln Heights that morning. She saw a man come around the corner of a nearby building. He looked anxious as he ran past her. She stated that she got a good look at his face, describing him as over forty years old, with a full beard that was black mixed with gray, and wearing glasses and a cap. After she rounded the corner, she saw Jenkins's truck parked on the street with someone in the vehicle. She and her friend called the police a short time later about the person in the truck. An officer arrived at the scene and discovered Jenkins. He was dead from two gunshots fired at close range. The officer called for an ambulance and for other assistance.
There were no indications of a struggle in the truck. The police examined the passenger door and dashboard for fingerprints, but could not find any usable prints. Underneath the victim was a set of keys. The police later found that one of the keys fit the ignition of a truck owned by Smith. Outside of the truck, on the ground on the passenger side, the police found a small cassette tape. Smith's voice was on the tape, but Jenkins's was not.
The record is not entirely clear on this point, but those who knew Jenkins suspected that Smith was responsible for his death, apparently because he had argued with Jenkins a few months earlier over payment for masonry work that Smith had performed on Jenkins's property. A relative of Jenkins's, who was also an FBI agent, offered to help the police in the investigation. He went to the house of one of Smith's employees, James Spikner, and asked Spikner to help him find Smith. The two went to Smith's house, but his wife stated that he was not there.
Spikner then led the agent to a storage facility where Smith kept tools for his construction business. Spikner began to enter the facility to see if Smith's tools were gone, which would have indicated whether he was working on a site somewhere. As he lifted the door to the unit, he saw that a truck had been parked in the facility, which was unusual. He recognized it as Smith's truck. When he had opened the door and entered the unit, he saw that Smith had been lying on the front seat of the truck. Spikner spoke to Smith briefly, but Spikner and the agent left the facility without Smith. At trial, Spikner testified that Smith frequently carried a small tape recorder with him to record conversations about his business transactions.
The police put together a photographic lineup that included Smith, whom they suspected of being involved in the murder, and others. They showed the lineup to Thomas, who identified Smith as the person she had seen running past her. Smith was later apprehended at an automobile pawn lot. He had frequently pawned automobiles there when he was low on cash in his construction business. On this occasion, he had attempted to sell two vehicles to the owner of the business, stating that he intended to leave town.
DOUBLE-JEOPARDY VIOLATION
We address first Smith's contention, raised in the fourth assignment of error, that his trial and conviction violated the constitutional protections against double jeopardy. Article I, Section 10, of the Ohio Constitution states, "No person shall be twice put in jeopardy for the same offense." The United States Constitution likewise states that no "person shall be subject for the same offence to be twice put in jeopardy of life or limb." Smith had been previously tried for the murder of Jenkins and had been convicted. But during closing argument in the first trial, the prosecutor made remarks that Smith considered prejudicial, and counsel for Smith moved for a mistrial, which was denied.
When Smith appealed, this court overturned his conviction, holding that the remarks made by the prosecutor were improper and prejudicial.[1]
The case was remanded to the trial court for further proceedings, which led to the conviction now being Cappealed. Smith claims that because the previous conviction was vacated for prosecutorial misconduct, the state was prohibited from again trying him for the murder of Jenkins. A similar argument has already been rejected by the Supreme Court of Ohio, and we reject it in this case.
If a defendant moves for and obtains a mistrial, the state is generally not barred by double-jeopardy concerns from retrying the defendant, since the trial has been cut short on the motion of the defendant.[2] An exception to this rule has been recognized when the state intentionally goads a defendant into terminating a trial. A mistrial granted because of such prosecutorial misconduct has been held to bar retrial of a defendant.[3] The Supreme Court of Ohio has distinguished this scenario from an appellate reversal of a conviction based on prosecutorial misconduct, which does not bar a retrial.[4] Because, in this case, Smith's conviction was overturned on appeal, his retrial was not constitutionally barred.
Smith claims that no principled basis exists for differentiating between a mistrial granted for prosecutorial misconduct and a reversal on appeal for the same misconduct. But the Supreme Court of Ohio has reasoned that, in the case of a mistrial, the defendant is goaded into depriving himself of his opportunity to go to the jury and "`end the dispute then and there with an acquittal.'"[5] If a defendant has the opportunity to take his case to a jury, then a reversal on appeal will not bar a second trial for the same offense.[6] We therefore reject Smith's fourth assignment of error.
SUBSTITUTION OF COUNSEL
Smith claims in his first assignment of error that the trial court erred in refusing to allow his attorney to withdraw as his trial counsel. Smith claims that he should not have been forced to go to trial represented by an attorney with whom he had a conflict. In a related assignment of error, the second, Smith claims that the trial court erred in denying his request for a continuance.
This was Smith's second trial for the same offense. The same counsel who had represented him at his first trial was his counsel for the second trial. On the morning that the second trial was to begin, before voir dire of the jury, Smith related to the court his dissatisfaction with counsel.
Smith indicated that counsel had previously informed him that, instead of going to trial, counsel wanted to pursue an action in federal court challenging the denial of the motion to dismiss the case on double-jeopardy grounds. Counsel had in fact requested a continuance to pursue the federal action, but the trial court had denied the motion. Smith's counsel then allegedly decided not to pursue the federal action while acting as trial counsel in the state criminal prosecution. Smith stated that he had not been informed that the trial was going forward, and that he was unprepared for trial. He also stated his disagreement with counsel's decision not to pursue the federal action.
Counsel responded by stating that he and Smith in fact disagreed on whether to pursue the federal action,[7] and that he did not know if he could effectively represent Smith because of their disagreement. He asserted that he had made Smith aware of the pending trial. Based on Smith's apparent dissatisfaction with his representation, counsel requested to withdraw. But, in response to questioning from the court, he stated that he was prepared to try to the case.
The trial court treated Smith's allegations as a request for a continuance to obtain new counsel, even though Smith had requested a continuance only for the purpose of pursuing a federal challenge to the denial of the motion to dismiss the charge against him. Noting that Smith's counsel, who had been retained and not appointed, had represented Smith in the prior trial; that Smith's request for a continuance had come on the morning of trial; that counsel had indicated that he was prepared to try the case; that the state was ready to proceed and had subpoenaed numerous witnesses for the day, and that Smith's reason for dissatisfaction with his counsel had nothing to do with effective representation at the trial, the court overruled Smith's motion for a continuance.
A similar situation arose in Thurston v. Maxwell.[8] There, one day before the trial was scheduled to begin, the defendant informed the court that he had dismissed his previously retained counsel and had obtained new counsel. He requested a continuance of the trial because he would not be able to meet with his new counsel until the following weekend. He claimed that his prior attorney did not want to try the case and had told him that he could not prevail. The trial court denied the continuance and "appointed" his discharged counsel to represent him.[9]
On appeal, the defendant challenged the trial court's denial of his request for a continuance. As in this case, the defendant did not claim that his trial counsel was incompetent. He claimed that his right to counsel of his choice had been violated. But the Supreme Court of Ohio held that the denial of the continuance was within the trial court's discretion, and that the denial did not deprive the defendant of his right to counsel.[10]
In this case, Smith did not have an unqualified right to retain the counsel of his choice.[11] The decision to grant or deny a continuance to allow him to obtain new counsel was within the discretion of the court,[12] and we will not overturn the court's decision absent an abuse of that discretion. An abuse of discretion is more than an error in judgment; it implies that the lower court's decision was unreasonable, i.e., not supported by a sound reasoning process,[13] or that it was arbitrary or unconscionable.[14]
Here, the trial court's decision was based on sound reasoning. Smith had waited until the morning of the trial to make his request. His counsel was the same counsel who had represented him through his first trial, the appeal, and the remand. Although Smith indicated dissatisfaction with counsel, he did not question counsel's competence to handle the trial. He merely disagreed with counsel's understandable reluctance to pursue a course of action that had nothing to do with the trial. He did not indicate that he had retained other counsel at that time, and thus he would have required time to find another attorney. Moreover, counsel disputed Smith's claim that he had not been kept apprised of the proceedings. And the state had subpoenaed numerous witnesses and was prepared to start the trial.
Based on all of these factors, which the trial court explicitly considered, we hold that the court did not err in denying Smith's request to change attorneys. We emphasize that Smith's disagreement with counsel was not, as stated in Smith's brief, related to the approach to be taken or the strategy to be used during the trial. It related instead to the decision not to pursue a federal action based on the earlier denial of the motion to preclude the second trial of Smith on the murder charge. Again contrary to Smith's allegations, the trial court did allow him to explain fully his disagreement with counsel. Smith was allowed to address the court directly, and the court's statement that it would not "hear from him again" was only an indication that it would further communicate with him through his counsel with respect to all other matters.
Finally, the affidavit that Smith filed, which related to alleged financial problems between him and counsel, contained the allegation that counsel had been neither retained nor appointed and further alleged the existence of a potential conflict of interest. But, the affidavit was not presented to the court until after the trial as part of a motion for a new trial, so the court could not have considered it in deciding whether to grant a continuance before the trial. Smith does not challenge the denial of his motion for a new trial. Therefore, we overrule the first and second assignments of error relating to the trial court's denial of Smith's request, on the morning of trial, to change counsel.
PHOTOGRAPHIC LINEUP
Smith next alleges, in his third assignment of error, that the trial court erred in admitting into evidence the photographic lineup shown by the police to a witness, because the lineup was unduly suggestive. In our decision on appeal from the first conviction, we held that the photographic lineup was not unduly suggestive.[15] The same lineup was used in the second trial. Th law of the case requires us to reject the present challenge and to overrule the third assignment of error.[16]
MANIFEST WEIGHT OF THE EVIDENCE
In his fifth and final assignment of error, Smith claims that his conviction was contrary to the manifest weight of the evidence. To reverse on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[17]
After reviewing the entire record, we cannot say that Smith's conviction was contrary to the manifest weight of the evidence. At trial, a witness testified that she saw a man running from the direction of the truck in which the victim was found. She identified that person as Smith. Another person saw Smith in his own truck in the driveway of the victim's business a short time before the murder occurred. Still another witness saw the victim driving in his truck and arguing with someone who matched the description of the person later identified as running from the scene of the murder. The keys to a truck owned by Smith were found on the front seat of the victim's truck. A small cassette tape, on which Smith's voice was recorded, was found just outside of the truck in which the victim was murdered. An employee of Smith's testified that Smith frequently carried a pocket tape recorder with him to record conversations related to his business.
Other circumstantial evidence supported Smith's conviction. Shortly after the murder, Smith was found in his truck inside of a small storage facility, lying on the front seat. He told several different persons that day that he needed money and was planning to leave town immediately. He mentioned several different places, such as Chicago, Texas and California, as his destination. But he gave no explanation for his departure, although he had lived in Lincoln Heights his whole life, operated his own business, and had a wife and a child there.
Benign explanations were offered for much of the circumstantial evidence presented against Smith. But, in reviewing the entire record, we cannot say that the jury clearly lost its way in resolving the conflicts in the evidence or created a manifest miscarriage of justice in rejecting Smith's explanations. We therefore overrule Smith's fifth assignment of error and affirm the trial court's judgment.
 _______________________________________ Hildebrandt, Presiding Judge.
 Sundermann, J, concurs.
Painter, J., concurs separately.
[1] See State v. Smith (1998), 130 Ohio App.3d 360, 720 N.E.2d 149.
[2] See State v. Loza (1994), 71 Ohio St.3d 61, 70, 641 N.E.2d 1082,1097; Oregon v. Kennedy (1982), 456 U.S. 667, 671, 102 S.Ct. 2083,2087.
[3] See, e.g., Kennedy, supra, at 675-676, 102 S.Ct. at 2089.
[4] See State v. Keenan (1998), 81 Ohio St.3d 133, 141, 689 N.E.2d 929,939-940.
[5] Id. at 142, 689 N.E.2d 940, quoting United States v. Jorn (1971),400 U.S. 470, 484, 91 S.Ct 547, 557.
[6] See id.
[7] Although counsel referred to this disagreement as one concerning "case strategy," the record shows that the case to which he was referring was not the state criminal trial but the federal action.
[8] Thurston v. Maxwell (1965), 3 Ohio St.2d 92, 209 N.E.2d 204.
[9] See Thurston, supra, at 92-93, 209 N.E.2d at 205.
[10] See Thurston, supra, at 93, 209 N.E.2d at 205.
[11] See State v. Keenan, 81 Ohio St.3d at 137; 689 N.E.2d at 937;State v. Downs (1977), 51 Ohio St.2d 47, 61, 364 N.E.2d 1140, 1149.
[12] See State v. McNeill (1998), 83 Ohio St.3d 438, 452, 700 N.E.2d 596,610; Thurston, supra, at 93, 209 N.E.2d at 205.
[13] See Hamilton Cty. Sheriff v. State Empl. Relations Bd. (1999),134 Ohio App.3d 654, 675, 731 N.E.2d 1196, 1198.
[14] See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140; Hamilton County Sheriff, supra at 675,731 N.E.2d at 1198.
[15] See Smith, supra, at 372, 720 N.E.2d at 157.
[16] See Pipe Fitters Union Local No. 392 v. Kokosing Constr. Co.,Inc. (1998), 81 Ohio St.3d 214, 218, 690 N.E.2d 515, 518.
[17] See State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717,720; State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541,546.