THE STATE OF OHIO, APPELLEE, *v.* DOWNS, APPELLANT.

[Cite as State v. Downs (1977), 51 Ohio St. 2d 47.]

(No. 77-75—Decided July 13, 1977.)

50

*Mr. James W. Luse,* prosecuting attorney, for appellee.

*Messrs. Dagger, Johnston & Ogilvie, Mr. John J. Charles, Messrs. Jackson, Keller & England* and *Mr. G. Gene Jackson,* for   appellant.

O'NEILL, C. J. Appellant presents five propositions of law.

I.

In his first proposition of law, the defendant attacks the constitutionality of Ohio's capital sentencing procedure, as follows:

"Section 2929.04(B) of the Ohio Revised Code, requiring a defendant convicted of aggravated murder to prove certain mitigating circumstances by a preponderance of the evidence in order to be sentenced to life imprisonment, rather than to death, violates the due process requirement of the Fourteenth Amendment of the United States Constitution, and Article one, Section sixteen of the Ohio Constitution; the prosecution must prove beyond a reasonable doubt the

absence of mitigating circumstances when the issue has been raised.''

Under the explicit language of the statute, the proceeding established in R. C. 2929.03 and 2929.04 for imposing sentence for a capital offense is not an adversary proceeding and, under the provisions of R. C. 2929.03(D) and (E), and R. C. 2929.04(B), neither the defendant nor the prosecution is required by statute to offer testimony or other evidence of mitigating circumstances. This conclusion requires the overruling of paragraphs 11 and 12 of the syllabus of *State* v. *Lockett* (1976), 49 Ohio St. 2d 48, 358 N. E. 2d 1062, and the overruling of the language which appears in *State* v. *Woods* (1976), 48 Ohio St. 2d 127, at page 135, 357 N. E. 2d 1059, at 1065, which reads: ''[t]his is particularly true since the defendant is required to establish duress or coercion by a preponderance of the evidence for purposes of mitigation.''

A careful examination of the records in both *Lockett* and *Woods* reveals that the trial court did not in either case ''[require the] defendant convicted of aggravated murder to prove certain mitigating circumstances by a preponderance of the evidence in order to be sentenced to life imprisonment, rather than to death * * *'' and thus both paragraphs 11 and 12 of the syllabus in *State* v. *Lockett, supra,* are dicta, and the language used at page 135 of the opinion in *State* v. *Woods, supra,* is also dictum.

Under the provisions of R. C. 2929.03(D) and (E), and R. C. 2929.04(B) the trial court is required to order presentence investigation and a psychiatric examination to be made and to order reports of such investigation and examination to be submitted to the court pursuant to R. C. 2947.06.

Under the provisions of R. C. 2929.03(D) and (E), the trial court must consider the reports which it is required to have prepared and submitted, and any other reports, testimony or other evidence submitted; statements of the offender, whether under oath or not, or any other testimony or evidence submitted on behalf of the defendant; testimony or other evidence submitted by the prosecution; evidence

submitted during the trial and arguments of counsel submitted to the court pursuant to division (D) of R. C. 2929.-03; and after consideration of all these items with regard to mitigating circumstances, the court is required to determine whether any mitigating circumstance listed in division (B) of R. C. 2929.04 is established by a preponderance of the evidence.

Under the provisions of R. C. 2929.03(E), if the trial court finds that none of the mitigating circumstances listed in division (B) of R. C. 2929.04 is established by a preponderance of the evidence, it shall impose the sentence of death on the offender; otherwise it shall impose a sentence of life imprisonment on the offender.

The purpose of a trial is different from the purpose of a mitigation hearing. In the former, the court is adjudicating the defendant's guilt or innocence. In the latter, the court is interested in acquiring a more thorough knowledge of the defendant's character and history. Therefore, the constitutional principles relevant to each differ. *Williams* v. *New York* (1949), 337 U. S. 241. For example, in sentencing a criminal defendant, a judge may consider evidence that could properly be excluded if it were presented during the trial.[1]

With respect to the burden of proof, this court recently noted in *State* v. *Robinson* (1976), 47 Ohio St. 2d 103, 107, 351 N. E. 2d 88, at 91, that the term "burden of proof" is ambiguous and can be confusing:

---

[1] *United States* v. *Lee* (C. A. 4, 1976), 540 F. 2d 1205 (reliable but illegally obtained evidence may generally be considered by the sentencing judge); *United States* v. *Majors* (C. A. 10, 1974), 490 F. 2d 1321, certiorari denied 420 U. S. 932 (information pertinent to sentencing is not to be disregarded because of exclusionary rules of evidence); *Collins* v. *Buchkoe* (C. A. 6, 1974), 493 F. 2d 343 (trial judge, in performing his sentencing function, may appropriately consider any responsible information of a relevant nature, even though unsworn or derived from an out-of-court source, including evidence of criminal charges for which the defendant may never have been tried); *United States* v. *Jones* (C. A. 5, 1973), 473 F. 2d 293, certiorari denied 411 U. S. 984 (reliance by the court on undisclosed presentation of information is not constitutionally proscribed).

" * * * As Thayer first pointed out, the term is used in at least two different senses. One sense is that of the burden of going forward with, or of producing, evidence, these terms being used interchangeably. The party having this burden on any given issue will lose on that issue as a matter of law if evidence sufficient to make out a case for the trier of facts is not produced. Similarly, if a party has the burden of going forward with evidence of a fact and fails to do so, the judge and the jury must assume the non-existence of the alleged fact. * * *

"The other sense of 'burden of proof' is the burden of persuasion. This refers to the risk which is borne by a party if the jury finds that the evidence is in equilibrium. The party with the burden of persuasion will lose if he fails to persuade the trier of fact that the alleged fact is true by such quantum of evidence as the law demands."

In a mitigation hearing the defendant does not bear the burden of initial production. Regardless of the defendant's participation or lack thereof in the mitigation hearing, the court has the initial responsibility to require that certain evidence be collected and certain examinations be made. From a careful consideration of those reports and of the evidence presented during the course of the trial, the judge, or panel of judges, decides whether mitigation is established by a preponderance of the evidence. If the defendant chooses not to present any evidence, the trial court may nonetheless find in his favor. If he chooses to present evidence, the court must consider any such testimony or documentary proof relevant to the sentencing decision. If the defendant makes a statement, he is subject to cross-examination only if he consents to make such statement under oath or affirmation. R. C. 2929.03(D).

As to the burden of persuasion, it is apparent from the statute that if the evidence is in equilibrium, the risk of non-persuasion falls upon the defendant. The question then is: Does the statute violate due process?

Relying upon *In re Winship* (1970), 397 U. S. 358, and *Mullaney* v. *Wilbur* (1975), 421 U. S. 684, the defendant contends that due process requires the prosecution to as-

sume the burden of proving beyond a reasonable doubt the lack of any mitigating circumstances enumerated in R. C. 2929.04(B).

In *Winship,* the Supreme Court dealt with a New York procedure which, in juvenile delinquency cases, placed on the prosecution the burden of proving delinquency, but only by a preponderance of the evidence. The court held that, as a matter of due process of law, the standard had to be that of proof beyond a reasonable doubt. See *Winship, supra,* at pages 363-364.

In *Mullaney,* the Supreme Court was concerned with a Maine procedure which placed on the defendant the burden of proving, by a preponderance of the evidence, the existence of provocation to reduce murder to voluntary manslaughter. As the Maine Supreme Court had interpreted Maine law, there was but a single generic offense of felonious criminal homicide, and the labels "murder" and "voluntary manslaughter" described only punishment categories. *Id.* at pages 688-690, 691, 699.[2] This interpretation of state law by the state's highest court was binding on the United States Supreme Court, and that court had no alternative but to accept it. *Mullaney, supra,* at page 691.

Although the state argued that the defendant would in any event suffer the consequences of a criminal conviction, for *Mullaney* involved only the degree of punishment, the court was not convinced that *Winship* was inapplicable. *Mullaney, supra,* at page 698:

"The safeguards of due process are not rendered unavailing simply because a determination may already have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal

---

[2]The Maine court emphasized that malice aforethought connotes no substantial fact (such as premeditation), but rather is solely a policy presumption. Under its interpretation of state law, the Maine court would require proof of the same element of intent for both murder and manslaughter, the distinction being that in the latter case the intent results from a sudden provocation which leads the defendant to act in the heat of passion. *Mullaney* v. *Wilbur* (1975), 421 U. S. 684, 689, at fn. 9.

liberty. The fact remains that the consequences resulting from a verdict of murder, as compared with a verdict of manslaughter, differ significantly. Indeed, when viewed in terms of the potential difference in restrictions of personal liberty attendant to each conviction, the distinction established by Maine between murder and manslaughter may be of greater importance than the difference between guilt or innocence for many lesser crimes."

It can be argued that the rationale of *Mullaney* is applicable to Ohio's death sentencing procedure. The mitigating factors listed in R. C. 2929.04(B) are relevant in determining the degree of punishment attached to the commission of the offense. As was true with the issue of provocation in *Mullaney*, these factors do not constitute elements of the crime. As was the case in both *Winship* and *Mullaney*, the defendant in the case at hand has at stake interests of immense importance.

It is true that the state would be required to bear an additional burden in a capital case. But neither that fact, nor the fact that the evidence may be peculiarly within the knowledge of the defendant, is of any consequence. Cf. *Mullaney*, at page 702.

Although this court recognizes that some of the principles in *Mullaney* might be applied to the provisions of R. C. 2929.04(B), we do not find it persuasive authority for the defendant's position. In *Mullaney*, the court's analysis was based upon an historical examination of the concepts of homicide and provocation. *Mullaney*, at pages 696 and 704. A similar analysis of the death penalty and a consideration of those factors relevant to mitigation show a radically different genesis and development. As the United States Supreme Court stated in *Woodson* v. *North Carolina* (1976), 428 U. S. 280, 303-304, 59 L. Ed. 2d 944, 961:

"* * * In *Furman*, members of the Court acknowledged what cannot fairly be denied—that death is a punishment different from all other sanctions in kind rather than degree. See 408 U. S., at 286-291 (Brennan, J., concurring): *id.*, at 306 (Stewart, J., concurring). A process that ac-

cords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind. It treats all persons convicted of a designated offense not as uniquely individual human beings, but as members of a faceless, undifferentiated mass to be subjected to the blind infliction of the penalty of death.

"This Court has previously recognized that '[f]or the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender.' *Pennsylvania, ex rel. Sullivan,* v. *Ashe,* 302 U. S. 51, 55 (1937). Consideration of both the offender and the offense in order to arrive at a just and appropriate sentence has been viewed as a progressive and humanizing development. See *Williams* v. *New York,* 337 U. S., at 247-249; *Furman* v. *Georgia,* 408 U. S., at 402-403 (Burger, C. J., dissenting). While the prevailing practice of individualizing sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative, we believe that in capital cases the fundamental respect for humanity underlying the Eighth Amendment, see *Trop* v. *Dulles,* 356 U. S., at 100 (plurality opinion), requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death."

In light of the historical dissimilarities between the issues of provocation in homicides and of mitigation in death sentences, the constitutional requirements for judicial resolution of those issues differ. Even in *Mullaney,* the court noted that the decision was not to be interpreted as casting doubt upon the discretion of trial judges to impose varying sentences for commission of the same crime, and that proof beyond a reasonable doubt of those factors con-

sidered by the judge in making his decision was not required. *Mullaney*, at 697, fn. 23. See, also, *Proffitt* v. *Florida* (1976), 428 U. S. 242, 49 L. Ed. 2d 913.

This court finds the principles enunciated in *Mullaney* not applicable to a mitigation hearing to determine sentence. We find no authority in *Mullaney* or in any of the recently promulgated death cases decided by the United States Supreme Court to support the proposition that the lack of mitigating factors is an additional, constitutionally mandated element of a capital offense.

That the defendant bears the risk of non-persuasion under R. C. 2929.04(B), does not make the statute constitutionally deficient. In *Proffitt, supra*, at pages 248-250, the Supreme Court, approving the Florida statutory scheme for sentencing, stated:

"'* * * Under the new statute, if a defendant is found guilty of a capital offense, a separate evidentiary hearing is held before the trial judge and jury to determine his sentence. Evidence may be presented on any matter the judge deems relevant to sentencing and must include matters relating to certain legislatively specified aggravating and mitigating circumstances. Both the prosecution and the defense may present argument on whether the death penalty shall be imposed.

"At the conclusion of the hearing the jury is directed to consider '[w]hether sufficient mitigating circumstances exist * * * which outweigh aggravating circumstances found to exist; and * * * [b]ased on those considerations, whether the defendant should be sentenced to life [imprisonment] or death.' §§921.141(2)(b)-(c) (Supp. 1976-1977). The jury's verdict is determined by majority vote. It is only advisory; the actual sentence is determined by the trial judge. The Florida Supreme Court has stated, however, that '[i]n order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.' *Tedder* v. *State*, 322 So. 2d 908, 910 (1975). Accord, *Thompson* v.

*State,* 328 So. 2d 1, 5 (1976). Cf. *Spinkellink* v. *State,* 313 So. 2d 666, 671 (1975).

"The trial judge is also directed to weigh the statutory aggravating and mitigating circumstances when he determines the sentence to be imposed on a defendant. The statute requires that if the trial court imposes a sentence of death, 'it shall set forth in writing its findings upon which the sentence of death is based as to the facts: (a) [t]hat sufficient [statutory] aggravating circumstances exist * * * and (b) [t]hat there are insufficient [statutory] mitigating circumstances * * * to outweigh the aggravating circumstances.' §921.141(3) (Supp. 1976-1977)."

Although Ohio's capital sentencing procedure differs from the procedure approved by the United States Supreme Court in *Proffitt, supra,* this court does not believe these differences to be constitutionally significant.

This proposition of law is without merit.

This court therefore holds that:

■ The provision of R. C. 2929.03(E) that "if the court finds * * * that none of the mitigating circumstances listed in division (B) of Section 2929.04 of the Revised Code is established by a preponderance of the evidence, it shall impose the sentence of death on the offender," places the burden of the risk of non-persuasion during the mitigation hearing upon the defendant, but does not impose an unconstitutional burden upon a defendant which would render the Ohio statutory framework for the imposition of capital punishment unconstitutional.

■ The provisions of R. C. 2929.03(E) requiring the court to impose the sentence of death on the offender "if the court finds, or if the panel of three judges unanimously finds that none of the mitigating circumstances listed in division (B) of Section 2929.04 of the Revised Code is established by a preponderance of the evidence * * *" do not make the lack of mitigating factors an additional and constitutionally mandated element of a capital offense, and the state is not constitutionally required to prove the lack of such mitigating factors beyond a reasonable doubt.

## II.

In his second proposition of law, the defendant contends that an indigent defendant must be permitted to retain the services of a psychiatrist of his choosing at public expense for purposes of a mitigation hearing. To provide otherwise, the defendant argues, deprives an indigent of psychiatric assistance that would be available to a defendant with more adequate financial resources, and such a result violates due process and is contrary to the principles of *Gideon* v. *Wainright* (1963), 372 U. S. 335, which required the state to provide legal counsel for indigents.

R. C. 2929.03(D) requires that the court have a presentence report and a psychiatric examination made prior to the mitigation hearing. Under R. C. 2947.06, "[t]he court may appoint not more than two psychologists or psychiatrists who shall make such reports concerning the defendant as the court requires for the purpose of determining the disposition of the case." The trial court in the instant case appointed a psychiatrist, Dr. Harold T. Brown, to make the psychiatric examination and requested that he and the staff of the Fairfield County Clinic for Guidance and Mental Health, where Dr. Brown is director, render a detailed and complete report. A written psychiatric examination and a psychologist's report were submitted and made available to the parties. After the psychiatrist's report had been submitted to the court, the defendant presented a motion to have the defendant examined by a psychiatrist of his own choice at state expense. The court overruled that motion, and at the mitigation hearing the only evidence presented was the testimony of three witnesses from the Fairfield County Clinic, a psychological associate, a psychologist, and a psychiatrist.

This court concludes that the trial judge correctly overruled the defendant's motion. The defendant produces no authority supporting the proposition that an indigent criminal defendant is entitled, in addition to those witnesses appointed by the state, to a psychiatrist of his own choosing provided at state expense. Even in the case of

right to counsel, as required by *Gideon, supra,* the defendant is not entitled to the appointment of counsel of his choice. In *Thurston* v. *Maxwell* (1965), 3 Ohio St. 2d 92, 93, this court held that the selection of appointed counsel is within the discretion of the court. See annotation, Indigent Accused's Right to Choose Particular Counsel Appointed to Assist Him, 66 A. L. R. 3d 996, Section 3.

An examination of the record indicates that the defendant had access to the psychiatric examination report and had ample opportunity to question the psychiatrist at the mitigation hearing.

This court therefore holds that in conducting a mitigation hearing under the provisions of R. C. 2929.03(D), a court, having appointed a psychiatrist and a psychologist pursuant to R. C. 2947.06, is not constitutionally required to appoint an additional psychiatrist of the defendant's choosing at state expense.

This proposition of law is overruled.

### III.

The defendant's third proposition of law reads as follows:

"Introduction into evidence of trousers taken from defendant's residence is prejudicial error when the trousers can not be identified at trial and are not connected to the offense for which defendant is being tried."

The Fairfield County Sheriff's Office obtained a search warrant on August 11, 1975, to search the apartment of the defendant for evidence relating to the triple homicide. Upon a search of the apartment, Deputy Edgington found a pair of gray work pants. The pants were taken to the Bureau of Criminal Investigation's Laboratory and were examined by Dale Hibner, a microanalyst. Hibner found a large blood stain at the knee area of the pants.

Browning testified on direct examination that the gray trousers were those worn by the defendant about the time of the killings. Upon cross-examination, however, she retracted her testimony. The trousers worn by the defendant on the day of the crime, she recalled, had been torn in

the knee. The gray trousers had no such tear. She repeated this testimony on redirect.

Ronald Byers testified that at the time he picked up the defendant at the designated rendezvous, the defendant had been wearing a green T-shirt and either a pair of blue jeans or gray work pants. He also indicated that the defendant's pants and shoes had been stained with blood.

From the above evidence, the defendant argues that the prosecution failed to show that the gray pants were relevant to this case. Before an article can be introduced in evidence against the accused, the defendant argues, it must be identified, and facts must be proven from which inferences may be drawn as to the innocence or guilt of the accused. In this case, he concludes, this was not done.

This argument is without merit. The fact that the pants were stained with blood, that they were seized from the defendant's room, and that Byers recalled the pants to have been stained and to have been either blue jeans or gray work pants—all constitute adequate evidence that the pants were relevant to the innocence or guilt of the accused.

This proposition of law is rejected.

## IV.

In his proposition of law No. 4, appellant suggests that the court erred in overruling defendant's motion to suppress. In that motion the defendant contended that the evidence was inadmissible because the search warrant was not returned to the judge designated under Crim. R. 41(C) and the inventory was incomplete and not verified as required by Crim. R. 41(D).

Crim. R. 41(D) and (E) read as follows:

"(D) Execution and return with inventory. The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken, or shall leave the copy and receipt at the place from which the property was taken. The return shall be made promptly and shall be accompanied by a written inventory of any property taken. The inventory shall be

made in the presence of the applicant for the warrant and the person from whose possession or premises the property was taken, if they are present, or in the presence of at least one credible person other than the applicant for the warrant or the person from whose possession or premises the property was taken, and shall be verified by the officer. The judge shall upon request deliver a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant. Property seized under a warrant shall be kept for use as evidence by the court which issued the warrant or by the law enforcement agency which executed the warrant.

"(E) Return of the paper to clerk. The judge before whom the warrant is returned shall attach to the warrant a copy of the return, inventory, and all other papers in connection therewith and shall file them with the clerk."

Deputy Sheriff Edgington, who obtained and executed the search warrant in issue, testified at the hearing on defendant's motion to suppress that he did not return the warrant to the judge, but instead returned it to a deputy clerk or the clerk of the Municipal Court. The evidence is not clear as to whether the inventory included the pants and whether it had been properly verified.

Because of the non-compliance with Crim. R. 41, the defendant argues that the pants should have been excluded from the evidence. The Court of Appeals recognized that the return of the search warrant was incorrect, but declined to find such an administrative error a basis for suppressing the evidence. It also held that any error was harmless.

It should be noted that here we are not confronted by any question of constitutional magnitude which might place this issue within the purview of the exclusionary rule first enunciated by the United States Supreme Court. See *Mapp* v. *Ohio* (1961), 367 U. S. 643. In the instance of an administrative error, this court held, in *State* v. *Myers* (1971), 26 Ohio St. 2d 190, 196, that a defendant's conviction will not be reversed "'unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby.'"

See, also, Crim. R. 33(E). In considering the record before us, this court discerns no prejudice accruing to the defendant from the return by the officer of the warrant to the clerk of courts rather than to the judge designated on the search warrant.

It is the conclusion of this court that the failure to return a search warrant to the properly designated judge and to prepare an inventory pursuant to Crim. R. 41(D) and (E) does not render inadmissible the evidence seized pursuant to the warrant.

This proposition of law is accordingly rejected.

## V.

In his final proposition of law, the defendant claims that the indictment alleging aggravating circumstances, *i. e.*, each killing being a part of a course of conduct involving the purposeful killing or attempt to kill two or more persons by the defendant, failed to separately state the aggravating circumstances in compliance with R. C. 2941.14.

R. C. 2941.14 provides:

"(C) A specification to an indictment or count in an indictment charging aggravated murder shall be stated at the end of the body of the indictment or count, and may be in substantially the following form:

"SPECIFICATION (or, SPECIFICATION 1, or, SPECIFICATION TO THE FIRST COUNT, or, SPECIFICATION 1 TO THE FIRST COUNT). The Grand Jurors further find and specify that (set forth the applicable aggravating circumstance listed in division (A)(1) to (7) of Section 2929.04 of the Revised Code. The aggravating circumstance may be stated in the words of the subdivision in which it appears, or in words sufficient to give the accused notice of the same)."

The relevant part of each of the three counts in the indictment stated that the defendant "did purposely and with prior calculation and design, cause the death of * * * [name of victim] which offense was a part of a course of conduct involving the purposeful killing of, or attempt to kill, two or more persons by the offender, as provided in

Section 2929.04 (A), Subsection 5, all in violation of Section 2903.01 of the Ohio Revised Code.'' The defendant claims that the indictment is defective because the specification, that the offense was part of a course of conduct involving the purposeful killing of two or more persons, was not stated separately from the offense.

This proposition of law is rejected. There is nothing in the statute which requires that the specification be set out separately. The specification was recited at the end of each count, and the defendant had adequate notice of all the elements of the offense with which he was charged. Crim. R. 7.

Having found the appellant's propositions of law to be without merit, this court affirms the judgment of the Court of Appeals.

*Judgment affirmed.*

HERBERT, W. BROWN, P. BROWN and SWEENEY, JJ., concur.

CELEBREZZE J., concurs in paragraph one of the syllabus and the judgment.

LOCHER, J., concurs in the judgment only.

CELEBREZZE, J., concurring in the first paragraph of the syllabus and the judgment. I write separately because, in my view, the majority has, inadvertently, further compounded the confusion engendered by the much misunderstood decision in *Mullaney* v. *Wilbur* (1975), 421 U. S. 684.

Although the majority remarks that ''[i]t can be argued that the rationale of *Mullaney* is applicable to Ohio's death sentencing procedure,'' it should be patently apparent that there is indeed an endless variety of seemingly sensible propositions which may be presented to this court for its consideration. Yet, it is equally clear that the creative efforts of counsel are for naught unless at least four of our number find the resultant argument to be compellingly rational. With reference to the cause at bar,

while I may recognize that the argument is plausible, I most emphatically do not recognize the "principles in *Mullaney*" to be applicable to the provisions of R. C. 2929.04(B).

The *Mullaney* decision represents the outcome of extended litigation concerned solely with the Maine law of homicide, and specifically with jury instructions which provided, *inter alia*, that if the prosecution established that a homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation. The Supreme Court, relying upon its decision *In re Winship* (1970), 397 U. S. 358, held that "* * * the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Mullaney,* at page 704.

I believe the distinctions between the situation present in *Mullaney* and the instant attack upon Ohio's procedure for consideration of mitigating circumstances are fairly obvious. Suffice to say, as the majority decision has demonstrated at some length, Ohio does not employ a procedural device which requires a defendant to present evidence in order to contest otherwise presumed or inferred facts, thereby shifting the burden of production of evidence to the defendant. Although it is true that one already convicted of aggravated murder, with a specification thereto, must shoulder the risk of non-persuasion at the mitigation hearing, such hearing is not an adversary proceeding, and neither the prosecution nor the convicted murderer bears any burden of proof with reference to mitigating circumstances.