[Cite as *State v. Westfall*, 2015-Ohio-175.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 101256

---

### STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

### JOHN WESTFALL

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED IN PART AND REVERSED IN PART; REMANDED FOR RESENTENCING

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-579173-A

**BEFORE:** S. Gallagher, P.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** January 22, 2015

**ATTORNEY FOR APPELLANT**

Kevin M. Cafferkey
1370 Ontario Avenue
2000 Standard Building
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Yosef M. Hochheiser
Assistant Prosecuting Attorney
Justice Center
1200 Ontario Street
Cleveland, OH   44113

SEAN C. GALLAGHER, P.J.:

{¶1} Appellant John Westfall appeals his conviction and sentence. For the reasons stated herein, we affirm the conviction, but we reverse the sentence and remand for resentencing because the offenses are subject to merger.

{¶2} Appellant was charged under a three-count indictment with attempted murder, felonious assault, and domestic violence. Each of the first two counts contained a notice of prior conviction and repeat violent offender specification. Appellant entered a plea of not guilty and waived his right to a jury trial. The case proceeded to a bench trial. The trial court found appellant guilty of all three counts as charged.

{¶3} The charges of attempted murder and felonious assault were merged as allied offenses of similar import, and the state elected to proceed with sentencing on the attempted murder offense. The trial court imposed a consecutive prison sentence of seven years for the offense of attempted murder and 12 months for the offense of domestic violence, with credit for time served. The court also imposed five years of mandatory postrelease control.

{¶4} Appellant filed this appeal, raising four assignments of error for our review. Under his first assignment of error, appellant claims there was insufficient evidence to support his convictions for attempted murder and domestic violence.[1] A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential

---

[1] We note that appellant has not challenged his conviction for felonious assault, which was merged with the offense of attempted murder for sentencing.

elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶5} In order to establish the offense of attempted murder, the state was required to prove that appellant attempted to "purposely cause the death of another[.]" R.C. 2903.02(A); R.C. 2923.02(A). "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Criminal attempt" occurs when one purposely does an act constituting "a substantial step in a course of conduct planned to culminate in his commission of the crime." *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), paragraph one of the syllabus, *overruled on other grounds by State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140 (1977). "To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose." *Id*.

{¶6} In order to establish the offense of domestic violence pursuant to R.C. 2919.25(A), the state was required to prove that appellant "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." A "family or household member" includes a person residing with and "living as a spouse" of the offender. R.C. 2919.25(F)(1). This includes one "who * * * is cohabiting with the offender." R.C. 2919.25(F)(2).

{¶7} According to the victim's testimony, on the night of June 13, 2013, appellant came home drunk and the victim asked him to go somewhere else to sleep it off. The appellant pushed his way into the home, locked the door behind him, threw the victim onto the floor, put his hands around her neck, and told her over and over that he was going to kill her, that she was "going to die tonight," and to "say [her] prayers." The victim was able to get her hands between

appellant's hands and her neck. The appellant grabbed the victim by the hair, whisked her around the room, and repeatedly punched her. During the attack, a hole was placed in the wall. Appellant proceeded to place the victim in another choke hold, causing the victim to temporarily lose consciousness and defecate herself. The victim pled for her life, but appellant told her "you have to die." The victim asked for a last request. Appellant allowed her to roll a cigarette, and she asked him for a washrag. During this time, the victim was able to call 911.

{¶8} A responding officer testified that when he arrived, he observed bloodstains on the carpet and the victim ran outside in a panic. He described the victim as looking "like she was in fear for her life, just crying and swollen face, bloody lip * * *. She looked like she had been beaten pretty badly, scratch marks on her neck." The officer found appellant sitting on the couch inside and noticed the whole living room was in disarray. Appellant was taken into custody, and the victim was taken to the hospital. The officer testified that before EMS took the victim out of the home, she went upstairs and changed her clothes because she had urinated and defecated on herself.

{¶9} A domestic violence detective who responded to the scene testified that she observed bloodstains and hair on the floor, as well as a hole in the wall. The detective observed the victim had extensive bruising to much of her head, neck, and body, and some swelling. She further testified that strangulation can result in defecation.

{¶10} Testimony in the case also reflected that the victim and the appellant had been dating since mid-April 2013; that appellant moved in with the victim on May 21, 2013; and that the incident in this case occurred on the night of June 13, 2013. The defendant provided the address he had been living at with the victim and where the incident occurred to the police. The victim had a rule that the appellant was not allowed into the home when he was drunk.

{¶11} Appellant asserts that the record reflects he stopped choking the victim after she lost consciousness and that the circumstances show his course of conduct was not planned to culminate in the commission of murder. However, the record shows that appellant continued to tell the victim "you have to die" after she regained consciousness.

{¶12} Appellant also asserts that he did not have a key to the victim's home and lived with her as a guest as opposed to cohabiting with the victim. However, there was evidence that appellant was the victim's boyfriend and that they lived together in the same home, which appellant himself provided as his address.

{¶13} After viewing the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. The state showed appellant intended to murder the victim and that he committed a substantial step toward his commission of the crime. The victim was not required to actually die for the offense to be complete. Both the appellant's statements that he was going to kill the victim and that she had to die, and his conduct in choking the victim to the point of unconsciousness, were reflective of appellant's criminal purpose to cause the death of the victim. Further, there was sufficient evidence to establish that the victim and appellant were cohabiting together and the trial court could have reasonably concluded that appellant was a family or household member. Appellant's first assignment of error is overruled.

{¶14} Under his second assignment of error, appellant claims his convictions for attempted murder and domestic violence were against the manifest weight of the evidence. He reiterates arguments raised under his sufficiency challenge, questions the credibility of the victim's testimony, asserts that the victim's drinking may have contributed to her loss of

consciousness, and claims the position of the hole in the wall did not correspond to the victim's testimony that it was caused when her head hit the wall.

{¶15} When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id*. A claim that a jury verdict is against the manifest weight of the evidence involves a separate and distinct test that is much broader than the test for sufficiency. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193.

{¶16} In this case, the victim described a brutal attack by appellant in which she was choked, beaten, thrown, and choked again to the point of unconsciousness, with appellant repeatedly threatening that he was going to kill her throughout the attack. Police testimony indicated the victim ran outside looking as though she was in fear for her life, and the police noticed visible scratch marks on the victim's neck, as well as extensive bruising and some swelling on her head, neck, and body. Photographs were also introduced depicting the serious physical harm caused to the victim.

{¶17} After carefully reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the conviction for attempted murder or for domestic violence. The court did not create a manifest injustice by concluding appellant was guilty of the crimes as charged.

**{¶18}** Under his third assignment of error, appellant claims he was denied effective assistance of counsel because defense counsel failed to raise the affirmative defense of abandonment. In order to substantiate a claim of ineffective assistance of counsel, the appellant must show "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 200, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. The defendant has the burden of proving his counsel rendered ineffective assistance. *Perez* at ¶ 223.

**{¶19}** We can discern no reasonable basis for trial counsel to have pursued an affirmative defense of abandonment. "It is well-established that once criminal intent is formed and 'such intent has been coupled with an overt act toward the commission of the contemplated offense, the abandonment of the criminal purpose will not constitute a defense to a charge of attempting to commit a crime.'" *State v. Ramsey*, 8th Dist. Cuyahoga No. 59549, 1992 Ohio App. LEXIS 891 (Feb. 27, 1992), quoting *State v. Cooper*, 52 Ohio St.2d 163, 370 N.E.2d 725 (1977), *vacated in part on other grounds*, 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1157 (1978). In light of the overt acts by appellant in threatening to kill the victim, beating her, and choking her to the point of unconsciousness and defecation, we find there is no reasonable probability that the verdict would have been different had trial counsel chosen to present the affirmative defense of abandonment in this case. Appellant's third assignment of error is overruled.

**{¶20}** Under his fourth assignment of error, appellant claims the trial court erred by failing to merge the offense of attempted murder and domestic violence. In *State v. Johnson*,

128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court established a two-pronged test to determine whether multiple offenses are allied offenses of similar import under R.C. 2941.25(A). *Id*. at ¶ 48. First, the court must examine "whether it is possible to commit one offense and commit the other with the same conduct." "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id*. at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id*. at ¶ 50. We apply a de novo standard of review to the trial court's merger determination. *See State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶21} The state does not dispute that it is possible to commit both attempted murder and domestic violence with the same conduct. The dispute herein focuses on whether the offenses were committed separately or with a separate animus. The state argues that the domestic violence conviction arose from appellant's beating the victim and throwing her around the room, and the attempted murder conviction arose from his later act of choking the victim until she passed out. The state asserts these were separate acts. However, unlike the case cited by the state, *State v. Harmon*, 9th Dist. Summit No. 26502, 2013-Ohio-1769, ¶ 29, in this case there was no break in the series of events from which the offenses arose, and the conduct occurred with a single animus.

{¶22} Our review of the record reflects that appellant engaged in a single course of conduct with a single animus. The victim testified that after appellant pushed his way into the home, he threw the victim on the floor, put his hands around her neck, and told her that he was

going to kill her. Appellant would throw the victim down when she tried to get up. During the attack, appellant was punching the victim. He grabbed her by the hair and whisked her around the room, and he placed her into another choke hold until she passed out. All throughout the attack, appellant told the victim that he was "going to kill [her]" and that she was "going to die tonight" and to "say your last wishes."

{¶23} Because the attempted murder and domestic violence are allied offenses of similar import, committed through a single course of conduct and with single state of mind, the offenses are subject to merger under R.C. 2941.25. Accordingly, the trial court erred in sentencing appellant for both offenses. We, therefore, sustain appellant's fourth assignment of error, vacate his sentence, and remand for resentencing. The state retains the right to elect which allied offense to pursue on resentencing.

{¶24} Judgment affirmed in part and reversed in part; case remanded for resentencing.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR