[Cite as *State v. McCullough*, 2021-Ohio-2616.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2020 CA 00150 |
| REGINALD JAMES MCCULLOUGH | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County
                             Court of Common Pleas, Case No. 2020-
                             CR-0262

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      July 29, 2021

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

KYLE L. STONE                          GEORGE URBAN
Prosecuting Attorney                   116 Cleveland Avenue N.W.
BY: VICKI L. DESANTIS                   808 Courtyard Centre
Assistant Prosecutor                   Canton, OH  44702
110 Central Plaza South, Ste. 510
Canton, OH  44702-1413

*Gwin, P.J.*

{¶1} Defendant-appellant Reginald McCullough [McCullough] appeals his convictions and sentences after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2} On February 7, 2020, a direct indictment from the Stark County Grand Jury was filed which indicted McCullough on one count of Attempted Unlawful Sexual Conduct with a Minor, R.C. 2923.02/2907.04(A)(B)(3), a felony of the fourth degree; and one count of Importuning, R.C. 2907.07(D)(2)(F)(3), a felony of the fifth degree.

{¶3} The Internet Crimes against Children Task Force (ICAC) is a multi-jurisdictional operation consisting of local law enforcement and federal authorities designed to prevent child abuse/sexual predators on the internet. The ICAC normally operates by conducting child abuse/sexual predator stings focused on trying to locate and identify individuals that are willing to have conversations, that are sexual in nature, with others who they believe are juveniles, and who will take the additional step to where to meet at a location with an understanding that there is going to be sexual activity with that juvenile.

{¶4} The ICAC Task Force planned a sting operation that would take place from January 31st through February 3rd of 2020. The ICAC Task Force arranged to use a model home in a residential neighborhood as the base of the sting operation, located in Jackson Township, Stark County, Ohio.

{¶5} There are protocols in place for the officers portraying themselves as juveniles on online social media platforms. The officers pretending to be under aged juveniles are called "chatters". The protocols included the requirement that the

"chatters" could not reach out to any subject for the initial conversation, the chatter must disclose the age they are portraying fairly early in the conversation, and the chatter were not to be the first to bring up a sex act.

{¶6} Detective David McConnell was approached by one of the individuals that organized the ICAC sting operation and asked to be participate in the operation. Detective McConnell was asked to become a "chatter." Detective McConnell testified that he had a fake Facebook profile with a female persona named "Emily Marie." He further testified that he created the fake Facebook profile five or six years prior. Detective McConnell used pictures of ICAC agent Elizabeth Crano for the fake profile. Ms. Crano applied filters to her photograph to make her appear to be a juvenile. Detective McConnell testified that he thought he changed the profile picture only once or twice since he created the fake account five to six years ago.

{¶7} Detective McConnell testified McCullough made the initial contact with Emily Marie on January 16, 2020 at 9:15 a.m. Detective McConnell recorded screen shots of the conversations. [State's Exhibits 1-A through 1-GG]. During the initial conversation, McCullough tells Emily that he is thirty-five years old. Emily responds that she is "14 about to be 15" years old. 2T. at 42. McCullough asked Emily to send him pictures of her "butt and titties." 2T. at 42. Emily declines to send pictures. McCullough then asks Emily, "Can we have sex. I like you." 2T. at 43. Emily asked McCullough if her age bothered him, to which McCullough replied, "Naw, I have b4 and her mom didnt mind." McCullough further revealed, "I had sex when I was 14." 2T at 43. McCullough tells Emily he is interested in oral sex. 2T. at 44 - 45. Emily tells McCullough that she is inexperienced and asks if that is all McCullough wanted. Id. The pair exchange messages

concerning the size of McCullough's penis and the size of Emily's breasts.  2T. at 46-47. A meeting at a local restaurant later that day failed to materialize.

{¶8} On January 23, 2020 Emily responds to McCullough that she is house sitting. McCullough asks if he can come to see her. Emily messages, "And do what?" McCullough replies, "What do you want to do?" To which Emily messages, "What did u say u wanted to do the other day?" McCullough responds, "Get some head lol". 2T. at 49-50. Before the meeting, Emily asks McCullough to bring her "some gummy worms and a soda" from a nearby gas station. 2T. at 51. Emily tells him it's by Jackson High School and to call when he gets to the gas station.  Detective McConnell testified they have the subject buy something at the gas station so they can get him on video and to know he is the same subject that was messaging Emily. McCullough was arrested as he walked up to the residence. 2T. at 28. McCullough was subsequently interviewed be Detective Ayers. [State's Exhibit 2].

{¶9} Detective Ayers testified at no time did McCullough tell him he did not believe Emily's age or that he believed that he knew her from his past. In fact, Detective Ayers testified that McCullough denied that Emily ever said she was fourteen years old.

{¶10} McCullough testified that he knew about eighty-five percent of the people who were friends with the fake Facebook profile, and a lot of those people were older than himself. McCullough further testified the fact that the fake Facebook profile came up as a suggested friend, that he had a lot of mutual Facebook friends with the fake Facebook profile, and that a lot of people who were friends with the Facebook profile were his age or older, he had no reason to believe that the fake Facebook profile was that of a

juvenile. 2T. at 84-87. Regarding the decoy officer, Taylor Trisner, who directed McCullough to the home where he was supposed to meet with Emily, McCullough testified "she didn't sound like a child. She sounded like an adult." 2T. at 89. McCullough testified that the voice sounded like a girl that he knew from Massillon. Id. McCullough testified that when he arrived at the house, he saw the decoy officer and she appeared to him to be an adult. 2T. at 89. Specifically, he testified the decoy officer, "looked like she was about 26 [years old]." 2T. at 90.

{¶11} On September 10, 2020, the Jury returned a verdict finding McCullough guilty of the indicted charges. Immediately following trial, the court sentenced McCullough to eighteen months for Attempted Unlawful Sexual Conduct with a Minor and twelve months for Importuning to run concurrently with four days of jail time credit.

*Assignments of Error*

{¶12} McCullough raises three Assignments of Error,

{¶13} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED.

{¶14} "II. THE APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.

{¶15} "III. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTALBECAUSE THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION."

### I., II. & III.

{¶16} In his First Assignment of Error, McCullough contends that there is insufficient evidence to support his convictions.    In his Second Assignment of Error, McCullough argues that his convictions were against the manifest weight of the evidence. In his Third Assignment of Error, Patterson contends that the trial court erred in not granting his Crim. R. 29 motion for acquittal at the conclusion of the state's case.

{¶17}  In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. *See, e.g., State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 974(1995); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492(1991).

**Standard of Appellate Review– Sufficiency of the Evidence.**

{¶18}  The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).   The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.  "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶19}  When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574

N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997*; *Walker*, at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review:** *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Patterson's guilt on each element of the crimes for which he was convicted beyond a reasonable doubt.*

### *No actual minor involved in the commission of the offenses.*

{¶20} McCullough contends that the evidence is insufficient to sustain a conviction for either of the indicted charges as there was not a juvenile female, sixteen years old or younger, involved in the offense, the fake profile had nothing on it which would indicate

that it belonged to a minor, and finally, there was simply no way that any rational person would believe that the fake Facebook profile belonged to a juvenile female sixteen years old or younger. [Appellant's Brief at 9-11].

{¶21} McCullough was convicted in Count One of the Indictment with Attempted Unlawful Sexual Conduct with a Minor in violation of R.C. 2907.04(A) and in Count Two of the Indictment with Importuning in violation of R.C. 2907.07(D)(2).

*Attempted Sexual Conduct with a Minor.*

{¶22} R.C. 2907.04(A) states that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

{¶23} Under R.C. 2923.02, the "attempt" statute,

(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense

* * *

(B) It is no defense to a charge under this section that, in retrospect, commission of the offense that was the object of the attempt was either factually or legally impossible under the attendant circumstances, if that offense could have been committed had the attendant circumstances been as the actor believed them to be.

(C) No person who is convicted of committing a specific offense, of complicity in the commission of an offense, or of conspiracy to commit an offense shall be convicted of an attempt to commit the same offense in violation of this section.

(D) It is an affirmative defense to a charge under this section that the actor abandoned the actor's effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of the actor's criminal purpose.

{¶24} The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step towards the commission of an offense. *State v. Woods,* 48 Ohio St.2d 127, 357 N.E.2d 1059(1976), paragraph one of the syllabus, *overruled in part by State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140(1977). *See also, State v. Ashbrook*, 5th Dist. Stark No. 2004-CA-00109, 2005-Ohio-740, *reversed on other grounds and remanded for re-sentencing pursuant to State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856. *In re: Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109. In defining substantial step, the *Woods'* Court indicated that the act need not be the last proximate act prior to the commission of the offense. *Woods* at 131-32, 357 N.E.2d 1059. However, the act "must be strongly corroborative of the actor's criminal purpose." Id. at paragraph one of the syllabus. This test "properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the

criminal intent becomes apparent." *Woods, supra* at 132, 357 N.E.2d at 1063. In other words, a substantive crime would have been committed had it not been interrupted.

{¶25} R.C. 2923.02(D) provides that: "[i]t is an affirmative defense to a charge under this section that the actor abandoned his effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." However, the abandonment must be "complete" and "voluntary" in order to exculpate a defendant. Where one abandons an attempted crime because he fears detection or realizes that he cannot complete the crime, the "abandonment" is neither "complete" nor "voluntary." *Woods, supra*, 48 Ohio St.2d at 133.

{¶26} Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case. *State v. Group*, 98 Ohio St.3d 248, 262, 2002-Ohio-7247 at ¶100, 781 N.E.2d 980, 996 (2002). Neither factual nor legal impossibility is a defense to an attempt charge if the attempted offense could have been committed "had the attendant circumstances been as the actor believed them to be." R.C. 2923.02(B). The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant. *State v. Garner*, 74 Ohio St.3d 49, 60, 1995-Ohio-168, 656 N.E.2d 623, 634; *State v. Wallen*, 21 Ohio App.2d 27, 34, 254 N.E.2d 716, 72 (5th. Dist. 1969).

{¶27} An attempted violation of R.C. 2907.04 requires an attempt to engage in sexual conduct with another person between the ages of 13 and 15.

{¶28} In *State v. Schaefer*, 155 Ohio App.3d 448, 2003-Ohio-6538, 801 N.E.2d 872, (2nd Dist.), the Second Appellate District held that the defendant's act of driving to meet a person who he believed was a 14–year–old girl he had solicited over the internet for the purpose of engaging in sexual activity was a substantial step in the commission of the offense of unlawful sexual conduct with a minor, and that the act of driving to the arranged meeting spot on the date and time planned was strongly corroborative of his criminal purpose. *See also State v. Tarbay*, 157 Ohio App.3d 261, 2004-Ohio-2721, 810 N.E.2d 979 (1st Dist.); State *v. Bonness*, 8th Dist. Cuyahoga No. 96557, 2012-Ohio-474. After agreeing with the holding in *Schaefer,* this Court in *State v. Bowers*, noted,

> All of appellant's actions were geared to setting up a meeting with a fourteen year old girl for the purpose of engaging in sex conduct. This is no different than an undercover officer posing as a prostitute and warning "Johns" once and then arresting them.

5th Dist. Stark No. 2005CA00015, 2005-Ohio-4270, ¶20. Accordingly, belief that a minor was involved is sufficient to sustain an attempt conviction. The reason for allowing undercover police officers to pose as minors is based in part upon the desire to keep underage persons out of harm's way, as one court has explained,

> The attempt provision here is no different than an attempted solicitation of prostitution, where the criminal conduct is the knowing effort to solicit an individual for prostitution. That the individual turns out to be a decoy undercover officer does not vitiate the criminal conduct—indeed, such sting operations are "common practice*." Rodriguez v. Panayiotou*, 314 F.3d 979, 984 (9th Cir. 2002).

So too have undercover officers been forced to resort to extensive investigation and sting operations to ferret out pedophiles who troll the Internet for minors. As Meek interprets the statute, detectives and undercover officers would be unable to police effectively the illegal inducement of minors for sex. Taking such a restrictive view of the statute would frustrate its purpose. Indeed, police preventative measures such as the sting operation conducted here would come at the cost of either rarely securing a conviction or putting an actual child in harm's way. In that scenario, the child molester gains at the tremendous expense of the child, a result sharply at odds with the statute's text and purpose. In declining Meek's interpretation, we opt for the integrity of the statute as a whole.

*United States v. Meek,* 366 F.3d 705, 717-718(9th Cir. 2004). *Accord, United States v. Roman,* 795 F.3d 511, 516 (6th Cir. 2015)(citing cases).

{¶29} In the case at bar, evidence was presented that McCullough first imitated contact with the Emily Marie persona on January 16, 2020. 2T. at 38. Emily told McCullough that she was fourteen about to be fifteen years old. 2T. at 42.  Emily asked McCullough, "My age dont bother u?" 2T. at 43. To which McCullough replied "Naw I have b4 and her mom didnt mind." 2T. at 43. Further McCullough stated, "I had sex when I was 14." 2T. at 43. McCullough flat out asked Emily "Can we have sex?" 2T. at 43. McCullough requested oral sex. 2T. at 44. McCullough goes on to request several other sexual acts that he wished to engage in with Emily. 2T. at 44-45; 47; 50. McCullough stopped at the gas station that Emily requested, bought gummy worms and soda pop as Emily had requested, and drove to a place where he had arranged to meet with Emily. 2T. at 51-53.

McCullough's act of driving to meet Emily who he believed was a 14–year–old girl he had solicited over the internet for the purpose of engaging in sexual activity was a substantial step in the commission of the offense of unlawful sexual conduct with a minor, and that the act of driving to the arranged meeting spot on the date and time planned was strongly corroborative of his criminal purpose.

{¶30} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that McCullough's conduct went beyond merely soliciting Emily Marie for sexual activity and constitutes an attempt to commit unlawful sexual conduct with a minor. We hold, therefore, that the state met its burden of production regarding Attempted Unlawful Sexual Conduct with a Minor and, accordingly, there was sufficient evidence to support McCullough's conviction.

*Importuning.*

{¶31} R.C. 2907.04 provides, in relevant part,

(D) No person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and either of the following applies:

* * *

(2) The other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender

is four or more years older than the age the law enforcement officer assumes in posing as the person who is thirteen years of age or older but less than sixteen years of age.

{¶32} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶33} As expressed by the state, the harm is in the asking. *State v. Bolden,* 2nd Dist. Montgomery No. 19943, 2004-Ohio-2315, ¶ 37. In the case at bar, Emily Marie clear told McCullough that she was fourteen about to be fifteen years old. 2T. at 42. Emily asked McCullough, "My age dont [sic.] bother u?" 2T. at 43. To which McCullough replied "Naw I have b4 and her mom didnt mind." 2T. at 43. Further McCullough stated, "I had sex when I was 14." 2T. at 43. McCullough flat out asked Emily "Can we have sex?" 2T. at 43. McCullough requested oral sex. 2T. at 44. McCullough goes on to request several other sexual acts that he wished to engage in with Emily. 2T. at 44-45; 47; 50.

{¶34} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that McCullough clearly believed that the person from whom he had solicited sex on the Internet was a 14–year–old girl. We hold, therefore, that the state met its burden of production regarding Importuning and, accordingly, there was sufficient evidence to support McCullough's conviction.

**Standard of Appellate Review – Manifest Weight.**

{¶35} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

> * * *

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶36} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the

appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶37} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

{¶38} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or

sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶39} In the case at bar, the jury heard the witnesses and viewed the evidence. The jury saw McCullough subject to cross-examination. The jury heard and saw the chat statements and evidence concerning McCullough's statement to the police. There was ample evidence for the jury to find that McCullough believed he was dealing with a 14-year-old girl. Emily Marie clearly told him her age. There is no evidence that McCullough was role-playing. At no time during the chats did McCullough express his disbelief at the representation that Emily was fourteen years old, or that he knew her from sometime in the past. In fact, when questioned by the police after his arrest, McCullough expressly denied that Emily ever told him she was fourteen years old.

{¶40} Thus, a rational basis exists in the record for the jury's decision.

{¶41}   We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'"  *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.  Based upon the foregoing and the entire record in this matter we find McCullough's convictions are not against the sufficiency or the manifest weight of the evidence.  To the contrary, the jury appears to have fairly and impartially decided the matters before them.  The jury heard the witnesses, evaluated the evidence, and was convinced of McCullough's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting McCullough of the charges.

{¶42}   Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which McCullough was convicted.

{¶43}   McCullough's First, Second and Third Assignments of Error are overruled.

{¶44}   The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur