[Cite as *State v. Kiser*, 2022-Ohio-2012.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 21-COA-013 |
| EDSEL KISER | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Ashland County
Court of Common Pleas, Case No. 21-CRI-
044

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      June 14, 2022

APPEARANCES:

For Plaintiff-Appellee             For Defendant-Appellant

CHRISTOPHER R. TUNNELL           BRIAN A. SMITH
Ashland Prosecutor                   755 White Pond Drive
BY: NADINE HAUPTMAN               Akron, OH 44320
Assistant Prosecutor
110 Cottage Street, Third Floor
Ashland, OH 44805

*Gwin, P.J.*

{¶1}    Defendant-appellant Edsel Kiser ["Kiser"] appeals his convictions and sentences after a jury trial in the Ashland County Court of Common Pleas.

*Facts and Procedural History*

{¶2}    On March 5, 2021, Joy-Lynn Cline was at the bar that she owns, Riley's, located in Ashland, Ohio, when a patron came in an ordered a drink.  Cline felt that the patron, later identified as Kiser, seemed a little odd.  Kiser said something off-putting, causing Cline to move to the other end of the bar.  In addition to herself and the female bartender, there were only a handful of other patrons still left on the premises.  Not feeling safe to confront Kiser herself, Cline contacted the Ashland Police Department and requested their assistance.

{¶3}    Officers Kyle Dress, Leah Zeisler, and Alan Swaggard of the Ashland Police Department were dispatched to Riley's to respond to the call.  Officer Zeisler and Officer Dress entered the bar to find Kiser sitting on the floor, having fallen.  When he attempted to stand up, Kiser again fell down.  2T. at 338.  Officer Dress was on Kiser's right side and Officer Zeisler on his left.  Id. at 303.   When Officer Zeisler grabbed ahold of Kiser's left arm to help him up, Kiser made a wide swing with his right arm in the direction of Officer Zeisler's head.  2T. at 303; 309; 319; 338.  Officer Dress was able to catch Kiser's arm before it made contact with Officer Zeisler.  Id. at 303.  At that point, Officers Dress and Zeisler assisted Keiser back to the floor, where he was then cuffed and read his *Miranda* rights by Officer Dress.  While still on the floor and before the officers could pick him up, Kiser was "yelling vulgarities" at them and telling them, "it was on," gesticulating that he wanted to fight them.  2T. at 304.

{¶4} After helping Kiser up from the floor, all three officers walked Kiser outside and headed to a patrol car. When they were approximately 10-15 feet away, Kiser began dropping to his knees and refusing to cooperate. Officer Zeisler warned Kiser that if he kept that up, then she would pepper spray him. 2T. at 305; 340. Ignoring that warning, Kiser continued to be belligerent and drop to his knees. Officer Zeisler pepper sprayed Kiser in his face for approximately two seconds

{¶5} Due to the combination of being intoxicated and having been pepper-sprayed, an EMS squad was called to the scene to transport Kiser to the hospital where he could then be cleared to be received into the jail. While waiting for the squad to arrive, Kiser yelled expletives at Officer Zeisler and kept trying to kick her, causing her to stand on his pant leg to prevent him from being able to kick, though it did not stop him from trying. Officer Swaggard poured water on Kiser's face to minimize the effects of the pepper spray. Kiser had also been spitting, so the officers were attempting to locate a spit mask.

{¶6} When the squad arrived, Kiser was still yelling, cursing, and violently kicking his feet. Squad members were able to get Kiser onto a gurney. Assistant Fire Chief Gabriel Campbell of the Ashland Fire Department arrived on scene to assist. As a spit mask was being located, squad members, including Assistant Chief Campbell, held a sheet over the top of Kiser's face to prevent Kiser from spitting on them. While still holding onto the sheet, Assistant Chief Campbell reached across Kiser's body in order to secure a strap holding Kiser on the gurney. As he did so, Kiser moved his head past the sheet and bit Assistant Chief Campbell on his left forearm. 2T. at 379. Assistant Chief Campbell

called out the "f'er bit me." 2T. at 369; 343-344. Officer Zeisler radioed dispatch to mark the time that Kiser had bitten Assistant Chief Campbell. 2T. at 344.

{¶7} Although Assistant Chief Campbell was wearing a sweatshirt, Kiser bit hard enough to leave marks of his upper and lower teeth, as well as bruising. Photographs of Assistant Chief Campbell's injuries were taken later at the fire station. State's Exhibit's 1, 2 and 3. 2T. at 323.

{¶8} On March 12, 2021, an Ashland County Grand Jury indicted Kiser on two counts of Assault on a Peace Officer, violations of R.C. 2903.13(A) and R.C. 2903.13(C)(5), felonies of the fourth degree.

{¶9} A jury found Kiser guilty of both counts after a three-day jury trial.

*Assignments of Error*

{¶10} Kiser raises five Assignments of Error,

{¶11} "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶12} "II. APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶13} "III. THE TRIAL COURT'S FAILURE TO GIVE A JURY INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF DISORDERLY CONDUCT WAS AN ABUSE OF DISCRETION.

{¶14} "IV. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO REQUEST A JURY INSTRUCTION ON ATTEMPTED ASSAULT CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND A VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED

STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶15} "V. THE TRIAL COURT'S DECISION TO ROTATE COURTROOM DEPUTIES ASSIGNED TO APPELLANT, IN VIEW OF JURORS, PREJUDICED APPELLANT, IN VIOLATION OF HIS RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

I & II.

{¶16} In his First Assignment of Error, Kiser argues that the convictions are against the manifest weight of the evidence. Further, in his Second Assignment of Error, Kiser contends that there is insufficient evidence to support his convictions.

Standard of Appellate Review– Sufficiency of the Evidence.

{¶17} The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

**{¶18}** When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, 150 Ohio St.3d at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery,* 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

Issue for Appellate Review: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Kiser was guilty beyond a reasonable doubt of Assault in violation of R.C. 2903.13(A) and R.C. 2903.13(C)(5)*

**{¶19}** Kiser was convicted of two counts of Assault on a peace officer: to wit, the bite to Assistant Chief Campbell's left forearm and his right arm swing at Officer Zeisler.

**{¶20}** R.C. 2903.13, Assault, provides, "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

**{¶21}** R.C. 2901.01(A)(3) provides, ""Physical harm to persons" means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

**{¶22}** "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B).

**{¶23}** The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant. *State v. Garner*, 74 Ohio St.3d 49, 60, 1995-Ohio-168, 656 N.E.2d 623, 634(1995); *State v. Wallen*, 21 Ohio App.2d 27, 34, 254 N.E.2d 716, 722(5th Dist. 1969). Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel,* 2nd Dist. Montgomery No. 16221, 1998 WL 214606 (May 1, 1998), *citing State v. Elliott*, 104 Ohio App.3d 812, 663 N.E.2d 412 (10th Dist. 1995).

### Assistant Chief Gabriel Campbell

**{¶24}** Assistant Chief Gabriel Campbell testified that as he was attempting to secure a strap holding Kiser to the gurney, Kiser moved his head past the sheet and bit

his arm. 2T. at 380. Assistant Chief Campbell was 100 percent sure that his forearm was in Kiser's mouth. Id. at 379. Assistant Chief Campbell did not believe that the sheet being held across Kiser's face to prevent Kiser from spitting on the officers was in between Kiser's mouth and Assistant Chief Campbell's arm. Id. at 380. Assistant Chief Campbell called out the "f'er bit me." Id. at 369.

{¶25} Officer Zeisler radioed dispatch to mark the time that Kiser had bitten Assistant Chief Campbell. 2T. at 344. Officer Swaggard testified that Kiser reached his head down and bit Assistant Chief Campbell on the arm. 2T. at 321. Officer Swaggard observed the injury to the Assistant Chief's arm. Id. at 322. The jury was shown pictures of the bite mark to Assistant Chief Campbell's arm. State's Exhibits 3, 4 and 5. Id. at 323.

{¶26} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Kiser knowingly caused or attempted to cause physical harm to a firefighter.

{¶27} We hold, therefore, that the state met its burden of production regarding the elements of assault of a firefighter; accordingly, there was sufficient evidence to support Kiser's conviction for assault involving Assistant Chief Campbell.

### Officer Leah Zeisler

{¶28} Under R.C. 2923.02, the "attempt" statute,

> (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.

(B) It is no defense to a charge under this section that, in retrospect, commission of the offense that was the object of the attempt was either factually or legally impossible under the attendant circumstances, if that offense could have been committed had the attendant circumstances been as the actor believed them to be.

* * *

(D) It is an affirmative defense to a charge under this section that the actor abandoned the actor's effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of the actor's criminal purpose.

{¶29} The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step towards the commission of an offense. *State v. Woods,* 48 Ohio St.2d 127, 357 N.E.2d 1059(1976), paragraph one of the syllabus, *overruled in part by State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140(1977). *See also, State v. Ashbrook*, 5th Dist. Stark No. 2004-CA-00109, 2005-Ohio-740, *reversed on other grounds and remanded for re-sentencing pursuant to State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, *In re: Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109. In defining substantial step, the *Woods*' Court indicated that the act need not be the last proximate act prior to the commission of the offense. *Woods* at 131-32, 357 N.E.2d 1059. However, the act "must be strongly corroborative of the actor's criminal purpose." Id. at paragraph one of the syllabus. This test "properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based

upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent." *Woods, supra* at 132, 357 N.E.2d at 1063. In other words, a substantive crime would have been committed had it not been interrupted. Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case. *State v. Group*, 98 Ohio St.3d 248, 262, 2002-Ohio-7247, 781 N.E.2d 980, 996 (2002).

{¶30} R.C. 2923.02(D) provides that: "[i]t is an affirmative defense to a charge under this section that the actor abandoned his effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." However, the abandonment must be "complete" and "voluntary" in order to exculpate a defendant. Where one abandons an attempted crime because he fears detection or realizes that he cannot complete the crime, the "abandonment" is neither "complete" nor "voluntary." *Woods, supra*, 48 Ohio St. 2d at 133.

{¶31} When Officer Zeisler grabbed ahold of Kiser's left arm to help him up, Kiser made a wide swing with his right arm in the direction of Officer Zeisler's head. 2T. at 303; 309; 319; 338. Officer Dress was able to catch Kiser's arm before it made contact with Officer Zeisler. Id. at 303. Officer Swaggard testified that as Officer Zeisler reached down to grab Kiser's left arm, Kiser "lunged forward and swung his right arm at Officer Zeisler." 2T. at 319.

{¶32} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Kiser knowingly caused or attempted to cause physical harm to a peace officer.

{¶33} We hold, therefore, that the state met its burden of production regarding the elements of assault of a peace officer; accordingly, there was sufficient evidence to support Kiser's conviction for assault involving Officer Leah Zeisler.

Standard of Appellate Review – Manifest Weight.

{¶34} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶35} The reviewing court must bear in mind; however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d

904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

**{¶36}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

Issue for Appellate Review: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice, that the convictions must be reversed and a new trial ordered.*

{¶37} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."  *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996).  Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true.  *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).  Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence.  *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶38} In the case at bar, the jury heard the witnesses subjected to cross-examination, saw the officers' body camera videos, photographs of Assistant Chief Campbell's arm, and heard Kiser's testimony.  The jury heard Kiser's attorney's arguments and explanations about the evidence and his actions.

{¶39} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'"  *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.  Based upon

the foregoing and the entire record in this matter we find Kiser's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Kiser's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting Kiser of the offenses.

{¶40} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Kiser was convicted.

{¶41} Kiser's First and Second Assignment of Errors are overruled.

III.

{¶42} In the case at bar, Kiser requested the trial court instruct the jury on the lesser-included offense of Disorderly Conduct in violation of R.C. 2917.11(B). *Proposed Jury Instructions,* filed May 14, 2021 [Docket No. 28]; 2T. at 435. In his third assignment of error, Kiser contends that the trial court abused its discretion in failing to give a jury instruction on the lesser-included offense of disorderly conduct.

Standard of Appellate Review

{¶43} We review a trial court's refusal to provide a requested jury instruction for an abuse of discretion. *State v. Wolons,* 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). Generally, "a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh evidence and discharge its duty as the fact finder." *State v. Comen,* 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus.

**{¶44}** An abuse of discretion can be found where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; In *re Guardianship of S .H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54.

Issue for Appellate Review:  *Whether the trial judge's decision denying Kiser's request for a jury instruction on disorderly conduct is clearly untenable, legally incorrect or amounts to a denial of justice, or whether the judgment reaches an end or purpose not justified by reason and the evidence.*

**{¶45}** "Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."  *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus.  In making this determination, the court must view the evidence in a light most favorable to defendant.  *State v. Smith*, 89 Ohio St.3d 323, 331, 731 N.E.2d 645(2000); *State v. Wilkins*, 64 Ohio St.2d 382, 388, 415 N.E.2d 303(1980).

**{¶46}** Nevertheless, an instruction is not warranted every time *any* evidence is presented on a lesser-included offense.  There must be "sufficient evidence" to "allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense."  *State v. Shane*, 63 Ohio St.3d at 632-633, 590

N.E.2d 272; *State v. Conway*, 108 Ohio St.3d at 240,842 N.E.2d at 1027, 2006-Ohio-791 at ¶ 134.

{¶47} The Ohio Supreme Court has cautioned,

Past decisions of this court have sometimes given the erroneous impression that, whenever there is "some evidence" that a defendant in a murder prosecution may have acted in such a way as to satisfy the requirements of the voluntary manslaughter statute, an instruction on the inferior-degree offense of voluntary manslaughter must always be given. See, *e.g., State v. Muscatello* (1978), 55 Ohio St.2d 201, 9 O.O.3d 148, 378 N.E.2d 738, paragraph four of the syllabus. See, also, *Tyler, supra,* 50 Ohio St.3d at 37, 553 N.E.2d at 592. That clearly never has been the law in this state, nor is it the law today. The "some evidence" referred to in those cases is simply an abbreviated way of saying that a jury instruction must be given on a lesser included (or inferior-degree) offense when sufficient evidence is presented which would allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense.

To require an instruction to be given to the jury every time "some evidence," however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense. Trial judges are frequently required to decide what lesser-included (or inferior-degree) offenses must go to the jury and which must not. The jury would

be unduly confused if it had to consider the option of guilty on a lesser included (or inferior-degree) offense when it could not reasonably return such a verdict.

*State v. Shane*, 63 Ohio St.3d at 632-633, 590 N.E.2d 272 (emphasis in original).

### Disorderly Conduct

**{¶48}** R.C. 2917.11(B) provides, in relevant part,

(B) No person, while voluntarily intoxicated, shall do either of the following:

(1) In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if the offender were not intoxicated, should know is likely to have that effect on others;

(2) Engage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another.

### Assistant Chief Gabriel Campbell

**{¶49}** As detailed in our disposition of Kiser's First and Second Assignments of Error, supra, Kiser caused Assistant Chief Campbell physical harm by biting Campbell's arm. *See also,* State's Exhibits 3, 4 and 5. Thus, Kiser did more than "present a risk of physical harm"; he in fact caused physical harm to Assistant Chief Campbell. Therefore, no evidence was presented which would have allowed the jury to *reasonably* reject the greater offense of assault, and find Kiser guilty on the lesser-included offense of disorderly conduct pursuant to R.C. 2917.11(B).

Officer Leah Zeisler

{¶50} As detailed in our disposition of Kiser's First and Second Assignments of Error, supra, when Officer Zeisler grabbed ahold of Kiser's left arm to help him up, Kiser made a wide swing with his right arm in the direction of Officer Zeisler's head. 2T. at 303; 309; 319; 338. Officer Dress was able to catch Kiser's arm before it made contact with Officer Zeisler. Id. at 303. Officer Swaggard testified that as Officer Zeisler reached down to grab Kiser's left arm, Kiser "lunged forward and swung his right arm at Officer Zeisler." 2T. at 319.

{¶51} Here, the evidence did not reasonably support acquittal of assault on a police officer; Kiser unequivocally attempted to cause Officer Zeisler physical harm by attempting to strike her with his fist. As a result, a jury instruction on the lesser-included offense of disorderly conduct was not warranted.

{¶52} Therefore, the trial judge did not abuse his discretion in refusing to instruct the jury on the offense of Disorderly Conduct in violation of R.C. 2917.11(B) with respect to Assistant Chief Campbell and Officer Leah Zeisler.

{¶53} Kiser's Third Assignment of Error is overruled.

IV.

{¶54} In his Fourth Assignment of Error, Kiser argues that the failure of his trial counsel to request a jury instruction on attempted assault, a felony of the fifth degree, with respect to Officer Zeisler constituted ineffective assistance of counsel.

Standard of Appellate Review

{¶55} "To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that

his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052. In addition, to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. *Andtus v. Texas,* 590 U.S. __, 140 S.Ct. 1875, 1881, 207 L.Ed.2d 335 (June 15, 2020).

Issue for Appellate Review: *Whether there is a reasonable probability that, but for counsel's failure to request a jury instruction on attempted assault, the result of the proceeding would have been different.*

**{¶56}** Kiser argues, "The greater offense of assault would also necessarily include an additional element, physical harm, that would not be present in attempted assault. Finally, there is no way to commit the offense of assault without the offense of attempted assault, as the act of assault, ipso facto, would require an attempt." Appellant's brief at 20.

**{¶57}** R.C. 2903.13, Assault, provides, "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Therefore, although one can be found guilty of assault for causing physical harm, one need not cause physical harm to be found guilty of assault pursuant to R.C. 2903.13. Rather, one can be found guilty for an "attempt to cause physical harm to another or to another's unborn." Kiser does not explain how, in essence, an individual can "attempt" to "attempt to cause physical harm."

**{¶58}** In any event, because R.C. 2903.13 permitted the jury to find Kiser guilty of assault for attempting to cause physical harm to Officer Zeisler, there is no reasonable probability that the result of the proceeding would have been different had trial counsel requested a jury instruction on "attempted" assault.

**{¶59}** Kiser's Fourth Assignment of Error is overruled.

V.

**{¶60}** In his Fifth Assignment of Error, Kiser argues his due process rights were violated when the deputies guarding him were rotated during his trial, thereby undermining the presumption of innocence and prejudicing him before the jury.

**{¶61}** The record does not support any inference that the trial judge ordered the deputies to be changed. Rather, the trial judge noted, "just because they switched a deputy sitting in the well of the Courtroom, in and of itself, and unless you got some evidence otherwise, I don't see where that's an issue." 1T. at 226. The trial judge further noted that he did not notice anything that occurred because it happened during a break in the proceedings. Id. at 227. Kiser did not move for a mistrial, nor request a curative instruction be given to the jury.

Standard of Appellate Review

**{¶62}** Recently, the Ohio Supreme Court addressed the "harmless error" standard of review,

> [W]hen a defendant objects to an error, an appellate court applies harmless-error review. *Perry* at ¶ 15. Under that standard, the state "bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." Id. Whether the defendant's substantial rights

were affected depends on whether the error was prejudicial, i.e., whether it affected the outcome of the trial. *Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, at ¶ 7. An appellate court is required to reverse the conviction when the state is unable to meet its burden. *Perry* at ¶ 15.

*State v. West,* Slip Op. No. 2020-0978, 2022-Ohio-1556, ¶ 22.

Issue for Appellate Review: *Whether Kiser's due process rights or right to the presumption of innocence was violated when the deputies were rotated during a break in the proceedings*

**{¶63}** In *Holbrook v. Flynn,* the defendant and his four co-defendants were on trial for armed robbery. 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525(1986). When the trial was about to begin, four uniformed state troopers were sitting in the front row of the spectators' section of the courtroom to supplement the customary security force, which was overextended at the time. The defendant's counsel objected to the troopers' presence, but this objection was overruled by the trial justice, primarily on the basis of voir dire responses during the selection of the jury indicating that the troopers' presence would not affect the defendants' ability to receive a fair trial.

**{¶64}** The Supreme Court noted that the first issue to be considered is "whether the conspicuous, or at least noticeable, deployment of security personnel in a courtroom during trial is the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest specific to each trial. We do not believe that it is." 475 U.S. at 568-569, 106 S.Ct. 1340, 89 L.Ed.2d 525. The Court further noted,

[T]he presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable. Jurors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence. Indeed, it is entirely possible that jurors will not infer anything at all from the presence of the guards. If they are placed at some distance from the accused, security officers may well be perceived more as elements of an impressive drama than as reminders of the defendant's special status. Our society has become inured to the presence of armed guards in most public places; they are doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm. *See, Hardee v. Kuhlman*, 581 F.2d 330, 332 (CA2 1978).

475 U.S. at 569, 106 S.Ct. 1340, 89 L.Ed.2d 525. The Court further observed,

We note, moreover, that even were we able to discern a slight degree of prejudice attributable to the troopers' presence at respondent's trial, sufficient cause for this level of security could be found in the State's need to maintain custody over defendants who had been denied bail after an individualized determination that their presence at trial could not otherwise be ensured. Unlike a policy requiring detained defendants to wear prison garb, the deployment of troopers was intimately related to the State's legitimate interest in maintaining custody during the proceedings and thus did not offend the Equal Protection Clause by arbitrarily discriminating

against those unable to post bail or to whom bail had been denied. *See*

*Williams, supra*, 425 U.S., at 505-506, 96 S.Ct. at 1693-1694

475 U.S. at 571-572, 106 S.Ct. 1340, 89 L.Ed.2d 525. The Court concluded, "if the

challenged practice is not found inherently prejudicial and if the defendant fails to show

actual prejudice, the inquiry is over." 475 U.S. at 572, 106 S.Ct. 1340, 89 L.Ed.2d 525.

{¶65} In the case at bar, the record merely shows a shift change occurred during

a break in the proceedings. The changing of deputies during a break in the proceedings

did not violate Kiser's substantial rights. Kiser has failed in his burden to show actual

prejudice. The record demonstrates that any error was harmless beyond a reasonable

doubt.

{¶66} Kiser's Fifth Assignment of Error is overruled.

{¶67} The judgment of the Ashland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur